## FARRAR & AL. *v.* MERRILL.

After a lapse of more than seventy years without any adverse claim, the jury may presume a grant from the original proprietor of a share in a township of land, to a person afterwards constantly acting as grantee of such share, sustaining various offices as such in the corporation of proprietors, and paying taxes thereon; although such share consist of wild land, and be not holden by any open visible possession.

THIS was a *writ of entry* on the demandants' own seizin of a lot of land in *Turner*, and a disseizin by the tenant; who pleaded the general issue, and prayed in aid the title of *Thomas Hobart*.

It appeared on the part of the demandants, that the late *Province of Massachusetts Bay* in *June* 1765, granted to *Captain Sylvester* and his companions, soldiers in the *Canada* expedition in 1735, their heirs and assigns, the right to locate a township of land in the *District of Maine*, in lieu of a township lost by the running of the line of *New-Hampshire*; and confirmed said grant and the location under it, in 1768;——that the lot demanded was regularly drawn to the right of *Samuel Dwelley*,

Farrar & al. *v.* Merrill.

one of the original grantees, *November* 17, 1781, as appeared by the proprietors' records ;——that *Samuel Dwelley*, by his deed of special warranty against the grantor and all claiming under him, dated *March* 1, 1815, conveyed all his right to one sixty-fourth part of the town of *Turner* to *Lemuel Dwelley* one of the demandants, who conveyed one half of his said right, in common *May* 1, 1815, to *Samuel Farrar*, the other demandant ;—— that in *May* 1815, the demandants sent an agent to the lot, who felled the trees on several acres, cleared and planted half an acre, and erected a small house thereon; said lot having never been cultivated, or inclosed in fences ;——and that the demandant's father, *Samuel Dwelley*, had been often heard to say that he owned land in *Maine*, which was granted for his father's services in the *Canada* war of 1735.

The tenant produced a paper, found among the papers of the proprietors in the possession of their last Clerk, the corporation having been dissolved in 1788, on which the name of *David Little* was placed against the right of *Samuel Dwelley*, and also against the right of one *Roach*. He also produced the book of the proprietors' treasurer, in which *David Little* was credited *July* 25, 1738, with the payment of a tax in the right of *Richard Dwelley*; and was marked as delinquent in three pounds ten shillings *November* 20, 1740, which sum is credited in the following year. In the same book were entered the receipt of divers sums from *David Little, Jun.* on the *Samuel Dwelley*-right, in the years 1769, 1774, and 1776. And it appeared that at a proprietors' meeting holden *October* 20, 1768, the same *David Little, Jun.* was chosen one of the proprietors' committee to call their meetings ; at one of which, in *November* 1770, he presided as Moderator. He also produced a deed from *Little* to *Nathaniel Waterman*, without covenants, conveying one sixty-fourth part of the town of *Turner*, " being the original right of *Samuel Dwelley* who was a soldier under *Capt. Joseph Sylvester* in the Canada expedition of 1735,"—and derived title from *Waterman* through *Thomas Hobart*, and others, to himself. He also proved the payment of taxes on the land, by *Waterman* and his heirs and assigns, from time to time, till the commencement of this action ;—that the entry of the demandants' agent in 1815, was forbidden by the agent of *Hobart*;—and that since the year

1738, no one had ever made claim to the *Dwelley* right, except said *Little* and those claiming under him.

Upon this evidence, *Wilde J.* who presided at the trial of this cause, at the last term holden in this county, instructed the jury, that if they were satisfied that *Little* had been admitted as one of the proprietors of said land, in the right of said *Dwelley*, had always been treated and acknowledged by the proprietors as the true owner of that right or share in the common property until he sold it to *Waterman* ; and that *Waterman* had been acknowledged and admitted as proprietor of the same right ; and that no person claiming under *Dwelley*, the original proprietor, had ever questioned *Little's* right until recently, as proved by the witnesses,——then they might presume, from these and the other circumstances in the case, that there was a grant of that right in common, from *Dwelley* to *Little*. And they accordingly returned a verdict for the tenant. To this direction the demandants filed exceptions.

*Fessenden* for the demandants.

*Whitman* for the tenant.

MELLEN C. J. Upon the facts reported by the Judge who sat in the trial of this cause, there seems no question that *Samuel Dwelley the elder* was one of the original proprietors in common of the tract of land of which the demanded premises are a part ; and unless the facts disclosed in the defence can be considered as furnishing a sufficient answer to the action, the title of said *Dwelley* seems to be regularly deduced, and the demandant entitled to recover. Indeed no question has been raised on this head by the counsel in the argument of the cause.

The counsel for the demandant has relied upon two objections ;—one, to the admission of a certain paper bearing the name of *David Little* placed against the right of *Samuel Dwelley* ; and also the right of one *Roach*. This paper, though objected to on the trial, was admitted by the Judge to go in evidence to the jury. The other objection is made to the instruction given by him to the jury, as to their authority to presume a grant to *Little*, if they believed the facts which had been proved by the tenant.

There seems, in the *exceptions*, to be no particular objection

to the opinion of the Judge admitting the paper just mentioned ; but only to his instructions to the jury. However, we have examined both points.

The *paper* was found among the other papers in the office of the proprietors' clerk; but was not signed, nor authenticated or referred to in any particular vote or proceedings of the proprietors ; and being viewed alone would seem to be inadmissible as proof; though the facts appearing on the *records* of the proprietors go far to strengthen the presumption that *David Little* was, at the time the paper was made and left in the office, the owner of *Dwelley's* right. But we consider the question as to the admissibility of the paper as wholly unimportant in the view we have taken of the cause; for we are all of opinion that the facts appearing on the undisputed records of the proprietors, taken in connection with some other facts which have been proved, fully justify the instructions and opinions delivered by the Judge to the jury, and the verdict which the jury have returned. It is our duty, in deciding on the exceptions, to look to the whole evidence, and not disturb the verdict when the facts proved, independent of the paper objected to, furnish the tenant with a substantial defence.

By the records it appears that *David Little*, as early as the year 1740, was noted as a delinquent in taxes;—that in 1768 and 1770 he was elected into offices, and in various capacities served the proprietors ;—that he was found at their meetings, acting with them;—that in 1769 he paid taxes on the right of *Samuel Dwelley*, and that the lot demanded was drawn to his right in *November* 1781 ;—that in 1777 *David Little* conveyed to *Nathaniel Waterman* (under whom the tenant claims) one sixty-fourth part of the general tract, being the original right of *Samuel Dwelley* ;—that the lands have always remained unoccupied and in a state of nature ;—that since the year 1738, down to *May* 1815, no claim to this land was ever made by *Samuel Dwelley* or any of his descendants, or any persons claiming under him or them by purchase, except *David Little* and his representatives ;—and that in *May* 1815 the demandant made a formal entry on the lands, before the commencement of this action.

On this proof, and in these circumstances, it is contended that

Farrar & al. v. Merrill.

the jury could not legally be permitted to presume a grant to *David Little* by *Samuel Dwelley* of his right in common ; because the presumption is against the record of the proprietors, no part of which is pretended to be lost. In answer to this it may be said, that so far as the records state, so far they support the presumption. But the objection is founded on the supposition that the conveyance of the right of *Dwelley* to *Little* must appear on the records of the proprietors. There seems, however, no ground for this ; because such transfers of common rights are usually by deeds ; and surely an unrecorded deed may be presumed, after a lapse of nearly eighty years, when legal principles do not forbid it, and when facts strongly support the presumption. But the counsel for the demandant has produced several authorities to shew that unless those claiming under the presumed grant have been in possession, no legal presumption can arise ; and that, like a prescription, it must depend on such possession. We are not disposed to deny the principle of the cases cited. The reason of the law in these cases is, that where the possession of the lands claimed has been openly held by others adversely to the claim of him who would presume a grant, such possession repels the presumption. But this principle cannot apply to wild lands where no visible possession can exist. There is nothing, then, in this case, of a nature to repel the presumption ; but, on the contrary, *an age of silence* on the part of all those under whom the demandant claims ; and the admission of the proprietors, in their meetings for nearly forty years before the dissolution of the proprietary, that *Little* was a proprietor ; so far as they could admit such a fact by allowing him to attend and vote at their meetings, and join in the duties and services devolving on their officers. This is a circumstance, equal, perhaps, to open possession, in favour of the presumption ; and there is not a solitary fact since the year 1738 to oppose it, except the entry of the demandant in 1815.

We think the Judge was correct in submitting all these facts to the consideration of the jury ; that his instructions to them were proper ; and that the conclusions drawn by them were fully authorised.

Judgment on the verdict.